UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JERMAINE LENARD MOSS,

v.                                          Case No. 8:06-cr-464-T-17TGW
                                            8:09-cv-2463-T-17TGW

UNITED STATES OF AMERICA.

_____

O R D E R

Jermaine Lenard Moss timely filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct an allegedly illegal sentence. He is proceeding on his amended motion to vacate (hereinafter "motion to vacate" or Motion To Vacate" or "2255 motion"). Doc. CV-6; Doc. CR-596.

**Procedural History of the Amended Motion To Vacate**

On June 23, 2010, this Court entered an order requiring Moss to file a second amended motion to vacate.  The Court specifically stated that any grounds for relief raised in a memorandum of law, but not stated on the form, would not be considered.  On July 23, 2010, Moss filed the second amended motion to vacate and completely ignored the Court's order.  He did not list any ground for relief on the form.  Instead, he stated, "See attached memorandum of law for each ground."

On July 28, 2010, the Court determined that Moss was not going to follow directions and that the Court would have to work with the second amended motion to vacate that was filed.  On that date, the Court ordered Moss to identify **on or before August 15, 2010 ,** any claims raised in the second amended motion to vacate or in the accompanying memorandum of law that he did not raise in the amended motion to vacate to which the Government had responded. Moss did not comply with this order.  Instead, Moss filed a motion to apply the Fair Sentencing Act of 2010 to his 28 U.S.C. § 2255 motion to vacate.

Filing a motion in his 28 U.S.C. § 2255 motion to vacate is not an appropriate manner in which to seek relief under the "Fair Sentencing Act of 2010."

The Government, however,  filed a response to this Court's July 28, 2010 order, and demonstrated that Moss did not raise any additional issues in his second amended motion to vacate that he had not raised in his amended motion to vacate (Doc. CV-6) and that he "dropped grounds 3, 4, and 8"  in the second amended motion to vacate.  Doc.  CV-25.

Because of the procedural history of this case, and taking into account the Government's response (Doc. CV-25) and Moss's lack of response to the Court's order regarding his second amended motion to vacate, the Court concludes that **Moss is proceeding on his first amended motion to vacate (Doc. CV-6) (hereinafter "Motion To Vacate" or "motion to vacate")**.  The Government filed a response to the motion to vacate, (Doc. CV-12) and Moss filed a reply to the response. Doc. CV16.

## PROCEDURAL HISTORY OF MOSS'S 28 U.S.C. § 2255 MOTION TO VACATE

On November 8, 2006, a federal grand jury in Tampa, Florida, returned a nine count Indictment charging Jermaine Lenard Moss  and  his  co-defendants  with  multiple

conspiracies, multiple drug offenses, and multiple firearms offenses. Specifically, Moss was charged with conspiracy to possess with intent to distribute 50 grams or more of crack cocaine and a quantity of cocaine (Count One); conspiracy to use and carry firearms during and in relation to a drug trafficking offense (Count Two); and possession with intent to distribute five grams or more of crack cocaine (Count Nine). Doc. CR-1.

A jury trial was thereafter commenced on June 11, 2007, and, following nearly two weeks of testimony and evidence, the jury returned a guilty verdict against Moss on all counts charged against him. Doc. CR-279. On October 5, 2007, this Court held a sentencing hearing and sentenced Moss to a 324 month term of imprisonment on Counts One and Nine of the Indictment, and a concurrent 240 month term of imprisonment on Count Two. Doc. CR-392.

Moss appealed his conviction and sentence, Doc. CR-398, arguing:

a) The District Court erred in allowing any evidence of a shoot-out;

 b) The District Court erred in denying Mr. Moss's judgment of acquittal on Count 9;

 c) The District Court erred in sentencing Mr. Moss.

On August 4, 2008, the Eleventh Circuit affirmed Moss's conviction and sentence. *See United States v. Moss*, 290 Fed.Appx. 234 (11th Cir. 2008) (per curiam), *cert. denied*, 129 S.Ct. 663 (2008). Doc. CR-511.

On January 8, 2010, Moss filed his §2255 motion arguing that his trial counsel was constitutionally ineffective for failing to:

a. move to dismiss the indictment on grounds that the government provided false evidence to the grand jury (Ground One);

b. move to dismiss the indictment on grounds that the grand jury and petit

3

jury were not selected pursuant to 28 U.S.C. § 1865 (Ground Two);

c. move to strike the petit jury for juror misconduct (Ground Three);

d. challenge the grand jury proceeding and not arguing that the grand jury and petit jury were under-represented as to black, Hispanics, and Indians (Ground Four);

e. strike a petit juror for cause, investigate the background of the juror, conduct individual voir dire regarding pretrial publicity and racial prejudice, argue on appeal that the district court's voir dire was inadequate (Ground Five);

f. conduct a pretrial investigation and present a defense (Ground Six);

g. effectively cross-examine witnesses (Ground Seven);

h. argue the removal of a juror subsequent to deliberations (Ground Eight);

 i. argue on appeal that district court's denial of a motion for new trial that was based on newly discovered evidence (Ground Nine);

j. move for a mistrial based on improperly admitted evidence (Ground Ten);

k. object to the jury instructions (Ground Eleven);

l. object to the application of the guidelines (Ground Twelve);

m. move for a mistrial based on the government's failure to disclose a report of interview of Jarvis McCants (Ground Thirteen);

n. move for a new trial based on the government's presentation of false testimony (Ground Fourteen);

o. allow him to take the witness stand (Ground Fifteen).

For the reasons discussed below, all of these claims are without merit.

## FACTUAL BACKGROUND

The facts pertaining to the offense conduct as listed below were obtained from the government's brief in *United States v. Moss*, 290 Fed.Appx. 234 (11th Cir. 2008) (per curiam), *cert. denied*, 129 S.Ct. 663 (2008).

4

At trial, four co-conspirators, Jarvis L. McCants, Chancey Deon Cooper ("Chancey"), Terry Lynn Eady, and Arnell Devon Elrod, testified as government witnesses, collectively describing an extensive cocaine and crack cocaine trafficking operation in Bradenton, Florida, called "the Fam," in which they and others had participated. Doc. CR-454 at 17-142; Doc. CR-456 at 262-329; Doc. CR-457 at 53-112, 123-208. From 2005 until mid-2006, Fam members Moss, Trinidad Marquez Hamilton ("Trinidad"), Maurice Lashane Hamilton("Maurice"), Eady, Elrod, McCants, Chancey, and Anthony Leon Warrick used an apartment at 2313 29th Avenue West in Bradenton, Florida, ("the 29th St. apartment") as a base of operations to sell cocaine and crack cocaine. Doc. CR-454 at20-41,48-52, 145-49; Doc. CR-456 at 264-69; Doc. CR-457 at 57-66, 123-33. In mid-2006, the Fam moved the drug trafficking operation to 4608 B 27th Street West, Bradenton, Florida, ("the 27th St. duplex") because too many people knew its location and some members had seen police driving by the 29th St. apartment. Doc. CR-454 at 56-58; Doc. CR-456 at 270-72; Doc. CR-457 at 65-73.

During the course of the drug-trafficking operation, Williams supplied powder cocaine to the Fam, and Williams, Elrod, and Eady cooked it into crack cocaine. Doc. CR-454 at 35-37, 56-60, 75; Doc. CR-456 at 267-72; Doc. 457 at 56-73, 129-31. Trinidad answered cellular phones to take orders for cocaine and crack cocaine and provided cellular phones to McCants, Maurice, Chancey, Elrod, Warrick, and Moss for them to answer and to take orders for cocaine and crack cocaine (collectively "the distributors"). Doc. CR-453 at 242-45; Doc. CR-454 at 21-41, 48-60; Doc. CR-456 at 263-72, 280-81; Doc. CR-457 at 60-73, 129-39. The cellular phones were assigned telephone numbers (941) 224-3340, (941) 773-6505, and (941) 932-3681. Doc. CR-454 at 23; Doc. CR-457

at 66-67, 130. Eady charged the distributors $300 per fifty-pack of crack cocaine, which the distributors then sold for $500 each. Doc. CR-457 at 61-62. Eady and the distributors split the proceeds fifty-fifty. Doc. CR-457 at 271-72. Eady cooked a kilogram of crack cocaine each week. Doc. CR-457 at 71-72. The distributor who took the order on a cellular phone delivered the cocaine and crack cocaine to customers, usually at a gas station. Doc. CR-454 at 22-60; Doc. CR-456 at 264-72; Doc. CR-457 at 71-73, 129-33. The Fam kept shotguns and handguns on-hand to protect its drugs and money from robbers. Doc. CR-454 at 59-75. The Fam acquired these firearms from its customers, who traded them for crack cocaine. Doc. CR-457 at 164-65. The firearms at the 27th St. duplex were available to all and were there for the protection of the duplex because "[e]verybody was protecting the house" and "[e]verybody was watching out for everybody's back[.]" Doc. CR-456 at 269, 300-02, 325-26. The firearms were available for the group to use for protection if someone tried to rob them of drugs or money. Doc. CR-457 at 63-64, 73-78, 134-43.

Johnny Barnes went to the 29th St. apartment to purchase powder cocaine from Williams and regularly saw Moss there taking orders for crack cocaine on the cellular phones. Doc. CR-454 at 145-52, 167-68. Moss carried a chrome firearm at the 27th St. duplex. Doc. CR-454 at 65-66. (After his arrest, Moss admitted to a fellow inmate, Quentin Isaiah Branch, that he had been part of a group that sold crack cocaine, but Moss claimed that, whereas others sold large amounts, he was a "light guy." Doc. CR-454 at 175-76.)

Mary Wasilko lived in the other side of the 27th St. duplex with her two daughters. Doc. CR-453 at 148. Five to six young men, including Moss, lived next door in the duplex and many more young men came and went from the duplex. Doc. CR-453 at 152-64. There were also frequent visitors to the duplex whose cars blocked Wasilko's driveway. Doc.

CR-453 at 159-60.

Beginning in January 2006, the Manatee County Sheriff's Office ("MCSO") began to investigate the Fam's drug trafficking enterprise. Doc. CR-453 at 207-14. The MCSO searched the Fam's trash and found sandwich bags and razor blades that tested positive for the presence of the cocaine, empty boxes for digital scales, large empty boxes of baking soda (which a detective testified was used to make crack cocaine from powder cocaine), and a drug ledger that showed the cost of powder cocaine, the amount to be charged for crack cocaine, and the profit to be earned from the sale of crack cocaine. Doc. CR-453 at 223-57, 264-80, 297-98.

On July 26, 2006, the MCSO executed a search warrant, searching the 27th St. duplex and searching automobiles that were parked outside. Doc. CR-453 at 280-81; Doc. CR-457 at 166. McCants and Maurice were outside and Cooper, Trinidad, Elrod, Warrick, and Chancey were inside when the MCSO began the search, but Chancey escaped out the back door. Doc. CR-454 at 84-85; Doc. CR-456 at 281-82.

When Elrod heard shouts of the police, he ran into the southeast bedroom and got on the floor. Doc. CR-457 at 168. Lieutenant Todd Shear approached the door to the southeast bedroom, then stopped to wait for a signal that he had back-up. Doc. CR-453 at 44-47. When he received the signal, Shear started to enter the southeast bedroom, shouting that he had a search warrant and that he was from the sheriff's office. Doc. CR-453 at 47-49; Doc. 455 at 272-73. As he entered the room, Shear saw Elrod lying on his stomach next to the bed. Doc. CR-453 at 49-55. Shear had a blind spot to the left and he turned to check the room's left corner. Doc. CR-453 at 50-54. When Shear turned, he saw Cooper lying on the floor on the other side of the bed. Doc. CR-453 at 54-56. Cooper held

a firearm, which he pointed and shot at Shear. Doc. CR-453 at 54-86. The bullet struck Shear's weapon and finger, ricocheted, and struck Shear's neck, wounding him. Doc. CR-453 at 56-86. (At trial, Shear testified he had no doubt that it was Cooper who had shot him and that he remembered Cooper's face. Doc. CR-453 at 55-56, 100, 134, 138-39.)

Lieutenant Stanley Schaefer and Detective Randall Barnett saw Shear take a small step into the southeast bedroom, heard a gunshot, and saw Shear spin back. Doc. CR-455 at 226-28, 273. Shear fell onto Schaeffer, and Schaeffer fired at a man in the bedroom. Doc. CR-455 at 273. Barnett saw Shear collapse onto Schaeffer and fired, suppressing fire into the bedroom so that Schaeffer could get Shear out of the way. Doc. CR-455 at 228-29. Barnett and Schaeffer then entered the bedroom. Doc. CR-455 at 229-30, 273. Barnett saw Elrod inside the doorway and saw that he had been shot. Doc. CR-455 at 230-33. Barnett turned to the "ambush corner" to the left and saw a second black man lying face down in the left corner of the room; this was Cooper, who was uninjured. Doc. CR-455 at 231-36. Cooper's revolver lay at his feet and a rifle lay next to him. Doc. CR-455 at 233-37, 242, 244, 245, 316, 318, 322. When Schaeffer entered the room, he saw both Elrod and Cooper, face-down on the floor. Doc. CR-455 at 274. Schaeffer saw Cooper's revolver lying on the floor at both men's feet. Doc. CR-455 at 278-82. (When Wasilko later returned to her side of the duplex, she saw bullet holes in the walls of her daughter's bedroom and her hall. Doc. CR-453 at 179-85.)

The MCSO recovered Cooper's revolver from the southeast bedroom. Doc. CR-454 at 240-244, 270-71; 455 at 48-50. Cooper's operable revolver was loaded with five bullets and it had one spent round in its chamber. Doc. CR-454 at 240-44, 273-77; Doc. CR-455 at 203-04. The MCSO later did a re-enactment of the shooting that demonstrated that the

single bullet fired from Cooper's revolver had fragmented, so that it sounded as if several rounds had been shot. Doc. CR-455 at 249-51.

During the search of the duplex, officers found cocaine, crack cocaine, marijuana, and money. Doc. CR-454 at 83-86, 283-87, 313-330; Doc. CR-455 at 10-36, 53-66, 96-128. The officers found crack cocaine in safes. PSR ¶ 30. The officers also found digital scales, baking soda, pots, and bowls, some of which bore traces of cocaine. Doc. CR-454 at 287-309; Doc. CR-455 at 112-19. The officers also found multiple firearms, both in plain view and concealed, and found ammunition stored throughout the duplex. Doc. CR-454 at 209-330; Doc. CR-455 at 15-36, 41-52, 56-62. Several of the firearms seized from the duplex were operable. Doc. CR-455 at 193-215.

After their arrests, McCants, Trinidad, Maurice, Warrick, and Cooper were housed together in jail and frequently spoke. Doc. CR-454 at 86-87, 99-100. Cooper admitted to McCants, Trinidad, Maurice, and Warrick that he had shot a policeman, claiming he had thought that the policeman was a robber. Doc. CR-454 at 87, 99-100. Cooper also told Branch, another fellow inmate, that he had shot a policeman, thinking that the policeman was a robber because robbers previously had robbed his group of drugs and money. Doc. CR-454 at 177-80.

By listening to Trinidad's, Warrick's, and Maurice's jail-house calls, the MCSO learned that the (941) 224-3340 cellular phone number had been reactivated on a new cellular phone after the execution of the search warrant. Doc. CR-457 at 211-21. Chancey confirmed at trial that he and Moss had continued using cellular phone number (941) 224-3340, and had continued to sell drugs after the July 26, 2006, search. Doc. CR-456 at 282-83, 327-28.

9

In September 2006, MCSO Detective Wendy Davis-Zarvis, acting undercover, purchased drugs by calling telephone number (941) 224-3340. Doc. CR-456 at 33-35. Zarvis called (941) 224-3340 on September 28, 2006, and, using street language, asked to buy $300 worth of crack cocaine. Doc. CR-456 at 33-36. Moss, Chancey and Patrick Dunbar then drove to Zarvis's location. Doc. CR-456 at 37-44, 56-61, 284-86. When Zarvis showed Moss a wad of twenty-dollar bills, Moss, who was the "distributor" that day, handed Zarvis a bag containing thirty-six pieces of crack cocaine, which weighed 6.6 grams, and took the money. Doc. CR-456 at 45-46, 288. Moss later accompanied Chancey on November 8, 2006, when Chancey attempted to sell crack cocaine to another MCSO detective. Doc. CR-456 at 78-96; 288-91.

An analysis of telephone records showed that at least 185,778 telephone calls were placed to and from the Fam's cellular phones during the time of the drug trafficking operation. Doc. CR-457 at 262-69. Most of the calls were placed to and from the (941) 224-3340 number; between April 2006 and October 2006, there were 87,130 calls to (941) 224-3340, an average of 483 calls each day. Doc. CR-457 at 262-63, 270. Before trial,

Cooper filed a motion requesting that the Court exclude evidence of the shooting of Lt. Shear, arguing that it was unrelated to the charges and that evidence was overly prejudicial; Moss adopted Cooper's motion. Docs. CR-122, 143. The United States argued in opposition that the shooting had been in furtherance of the conspiracies charged in Count One and Two of the indictment, that it was charged in Count Five, that it was direct evidence of Cooper's role and function in the conspiracies, that it was inextricably intertwined with other evidence of the conspiracy, that it was necessary to complete the story of the crime, and that its probative value outweighed any undue prejudice. Doc. CR-

10

150 at 6-8. The Court, adopting the government's position, denied the motion (Docket No. 150) Doc. CR-233. Cooper and Moss renewed their objections to this evidence at trial and moved for a mistrial based on its admission. Doc. CR-453 at 51. The Court overruled the renewed objections and denied the motions. Doc. CR-453 at 51. At the conclusion of the United States' case, Cooper and Moss argued that cumulative error, including the admission of the shooting evidence warranted a new trial. Doc. CR-458 at 34-35, 38-39. The Court denied the motion for new trial. Doc. CR-458 at 60-61.

At sentencing, the Presentence Report (PSR) prepared by the United States Probation Office recommended that the Court assess Moss a guidelines base offense level of 38 due to the amount of drugs involved in the conspiracy and then add two additional levels due to the presence of firearms (and in particular, based on McCants' and Chancey's testimony that they had seen Moss carry a firearm), for an adjusted offense level of level 40. Moss PSR, ¶¶ 44-51. The PSR also recommended Moss's criminal history category be at II. Moss PSR ¶ 57. The resulting advisory guideline imprisonment range was 324-405 months. Moss's PSR ¶ 87. The PSR noted that Moss was subject to a twenty-year mandatory minimum sentence on Count One, that Count Two carried a maximum penalty of twenty years' imprisonment, and that Count Nine carried a mandatory minimum sentence of ten-years' imprisonment. Moss's PSR ¶¶ 85, 86. Moss objected to that guideline range, contending that he should receive a mitigating role reduction. Doc. 448 at 4-8. The Court overruled the objection, emphasizing Moss's lengthy involvement in the conspiracy and that he continued to distribute drugs even after the execution of the search warrant and arrest of most of his co-defendants. Doc. 448 at 17-18.

The Court set Moss's offense level at 40, his criminal history category at II, and the

11

advisory sentencing range at 324 to 405 months' incarceration. Doc. 448 at 18. The Court sentenced Moss to 324 months' imprisonment, stating that it had considered the sentencing factors of 18 U.S.C. § 3553(a) and had found the sentence to be sufficient but not greater than necessary to comply with the statutory purposes of sentencing. Doc. 448 at 36-39, 44.

## DISCUSSION

Local Rule 3.01(a) advises that with all motions filed ". . . the movant shall include a concise statement of the precise relief requested, a statement of the basis for the request, and a memorandum of legal authority in support of the request..." (emphasis added). Moss, however, has not submitted a memorandum of law in support of his motion. Even a pro se litigant must fairly raise and argue all of his claims in his initial petition, giving the responding party a fair opportunity to respond to the claim. *See Walker v. Dugger*, 860 F.2d 1010, 1011 (11th Cir. 1988) (pro se litigants are entitled to liberal construction, but issues mentioned only superficially are not properly raised). The district court should not consider arguments that are not fairly raised, *Walker*, 860 F.2d at 1011.

Moss has raised fifteen claims that his counsel was ineffective during the trial and/or appellate process. To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

### Ground One

Counsel was ineffective for failing to move to dismiss the indictment on grounds that the government presented false evidence to the grand jury.
Doc. CV-6 at 5.

The Fifth Amendment provides, "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury" U.S. Const. amend. V. "A grand jury need find only that there is probable cause to believe that a crime was committed and that the defendant was the party who committed the crime." *United States v. Jennings*, 991 F.2d 725, 729 (11th Cir.1993).

"[A]s a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254(1988). "[D]ismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Id.* at 256. Additionally, the Supreme Court has noted that a petit jury's subsequent guilty verdict renders "any error in the grand jury proceeding connected with the charging decision [ ] harmless beyond a reasonable doubt." *United States v. Mechanik*, 475 U.S. 66, 70 (1986) (citing racial discrimination in the composition of the grand jury as an exception).

During the government's presentation to the grand jury, Special Agent Robert Quinn of the Drug Enforcement Administration testified that he had interviewed someone who was in federal prison who was part of this "crew" before he was arrested. GJ Transcript at 38. The person provided information as to the inner workings of the group, that the group was a violent one, and that they carried firearms. Id. at 39. Agent Quinn was asked if this person

13

had talked about the individuals named in the indictment, including Jermaine Moss, to which Agent Quinn said that this person had talked about Moss. Id. at 40. Moss indicates in his motion that the person Agent Quinn is referring to during the grand jury proceedings is Johnny Barnes. Doc. CR-6 at 5. Nowhere does the grand jury transcript indicate that Agent Quinn is referring to Johnny Barnes, as Moss claims. At trial, Barnes indicated that he was interviewed by Agent Murray, along with Agent Quinn, but that he never mentioned Jermaine Moss's name to the agents. Doc. CR-454 at 161-162. Moss gives no reason as to why this was prejudicial to him, nor does he cite any case law to support his claim. Even if Moss had given reasons why this was prejudicial to him, the outcome of the grand jury proceeding and the trial proceeding would have been the same given the overwhelming amount of evidence against Moss.

Consequently, Moss's claim fails, even if correct because Agent Quinn's "other testimony provided additional unchallenged evidence upon which the grand jury could have relied. Further, the witness's testimony, even if inaccurate, is not sufficient to require dismissal of the indictment." *United States v. Cosme*, 134 Fed.Appx. 391 (11th Cir. 2005).

Moss has not demonstrated prejudice resulting from the grand jury's indictment or "grave doubt" that the decision to indict was free from substantial influence. *Bank of Nova Scotia*, 487 U.S. at 256. Additionally, the petit jury's guilty verdict renders any grand jury error harmless.

Ground one does not warrant relief.

### Ground Two

Counsel was ineffective for failing to move to dismiss the indictment on grounds that the grand jury and petit jury were not selected pursuant to 28 U.S.C. § 1865. Doc. CV-6 at 6.

14

During voir dire, Ms. Schade indicated that her occupation was a state court interpreter for the Tenth Judicial Circuit. Doc. CR-452 at 115. This Court asked Ms. Schade if she had any close contact with law enforcement. Id. at 116. Ms. Schade indicated that she had contact with law enforcement as it related to her job, but it was not close contact. Id. This Court then asked Ms.Schade if law enforcement was in the witness box if she would be able to evaluate what they said and how they said it and if she would be affected by their occupation. Id. Ms.Schade indicated, "Exactly Your Honor." To which this Court replied, "--correct?" Id. To which Ms.Schade indicated yes. Id. This Court went on to ask if Ms.Schade's employment by the state as an interpreter would in any way affect her ability to be fair and impartial, to which Ms.Schade replied, "No, my Your Honor. My job title's for us to be completely neutral on either side." Id. at 117.

Title 28, U.S.C. § 1865 provides that:

(a) The chief judge of the district court, or such other district court Case judge as the plan may provide, on his initiative or upon recommendation of the clerk or jury commission, or the clerk under supervision of the court if the court's jury selection plan so authorizes, shall determine solely on the basis of information provided on the juror qualification form and other competent evidence whether a person is unqualified for, or exempt, or to be excused from jury service. . . .

(b) In making such determination the chief judge of the district court, or such other district court judge as the plan may provide, or the clerk if the court's jury selection plan so provides, shall deem any person qualified to serve on grand and petit juries in the district court unless he--

(1) is not a citizen of the United States eighteen years old who has resided for a period of one year within the judicial district;

(2) is unable to read, write, and understand the English language with a degree of proficiency sufficient to fill out satisfactorily the juror qualification form;

15

(3) is unable to speak the English language;

(4) is incapable, by reason of mental or physical infirmity, to render satisfactory jury service; or

(5) has a charge pending against him for the commission of, or has been convicted in a State or Federal court of record of, a crime punishable by imprisonment for more than one year and his civil rights have not been restored.

This Court determined that Ms.Schade did not fit any of the five enumerated exceptions listed above and allowed her to remain on the panel. A trial court is granted discretion in conducting its voir dire examination and determining whether to excuse a juror for cause. *United States v. Schlei*, 122 F.3d 944, 994 (11th Cir.1997). If Moss and his counsel had issues with Ms.Schade that they could have asked that she be removed for cause, or used a peremptory strike to dismiss her.

Again, Moss gives no reason as to why this was prejudicial to him, nor does he cite any case law to support his claim. Even if Moss had given reasons why this was prejudicial to him, the outcome of the trial would have been the same given the overwhelming amount of evidence against him.

Ground two does not warrant relief.

### Ground Three

Counsel was ineffective for not moving to strike the petit jury on the grounds that the petit jurors were untruthful when questioned about whether they had seen, read, or heard any news accounts regarding this case. Doc. CV-6 at 8.

As the Government pointed out, Moss did not raise this claim in his second amended motion to vacate. However, in an abundance of caution, the Court will address the claim.

In order to establish that pretrial publicity prejudiced Moss, he must show first that

the pretrial publicity was sufficiently prejudicial and inflammatory, and second that the prejudicial pretrial publicity saturated the community where the trial was being held. *See Coleman v. Kemp*, 778 F.2d 1487, 1490 (11th Cir.1985); *Rideau v. Louisiana*, 373 U.S. 723 (1963). In *Coleman*, the Eleventh Circuit emphasized that the "presumptive prejudice standard recognized in *Rideau* is only rarely applicable ... and is reserved for an extreme situation." 778 F.2d at 1537 (citations and quotation marks omitted). Moss's burden "to show that pretrial publicity deprived him of his right to a fair trial before an impartial jury is an extremely heavy one." *Id.*

Moss has not satisfied this burden. He has not made a showing of what publicity it was that the jurors were untruthful about, nor has he established that the pretrial publicity even existed and, if so, was sufficiently prejudicial.

Prior to the start of voir dire, this Court swore in the prospective jurors and the entire panel affirmatively responded that each person would truthfully answer all questions touching upon their qualification as jurors in the case. Doc. CR-451 at 82. Following the reading of the indictment, the Court asked if any juror knew anything about the case by either seeing something about it or reading about it, or hearing something about it. Id. at 93. One prospective juror stood and was questioned by this Court as to what it was that he knew about the case. Id. at 93-95. The prospective juror was ultimately dismissed for cause. Id. at 95. No other prospective juror had heard anything about the case. Moss, therefore, has failed to show that any prospective juror was affected by pretrial publicity and, more importantly, that pretrial publicity saturated the community where trial occurred.

Ground three would not warrant relief.

17

Ground Four

Counsel was ineffective for failing to raise a challenge relative to the under representation of Blacks, Hispanics, and Indians on the grand jury and petit jury.

As the Government pointed out, Moss did not raise this claim in his second amended motion to vacate.  However, in an abundance of caution, the Court will address the claim.

As an initial matter, Moss' attorney did, in fact, raise an issue with the Court relative to the composition of the jury venire. During the jury selection process, Mr. Sartes, counsel for defendant Tulani Cooper, made a general objection that the jury did not represent a cross section, to which Ms. Rose, Moss's counsel, "opted in."  Doc. CR-452 at 141-147. The Court overruled the objection. Doc. CR-452 at 145, 147. D-127 at 95-96.

The Sixth Amendment requires that the venire from which a jury is selected represent a "fair cross-section" of the community. *Taylor v. Louisiana*, 419 U.S. 522 (1975). In order to establish a prima facie showing of a violation of this fair cross-section requirement, a defendant must demonstrate that: (1) the group alleged to be excluded is a distinctive group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of persons in the community; and (3) this under-representation is due to systematic exclusion of the group in the jury selection process. *Duren v. Missouri*, 439 U.S. 357 (1979)).

Moss has not provided any evidence that African-Americans, Hispanics, or Indians were singled out for different treatment under the laws as written or as applied here. Nor has he demonstrated the systematic exclusion of a distinctive group in his venire panel, as is required for a Sixth Amendment violation. Instead, Moss makes only self-serving statements and conclusions. He also gives no reason, if his claim was correct, why it was

18

prejudicial to him. Finally, Moss does not cite any case law to support his claim.

Ground four does not warrant relief.

## Ground Five

Counsel was ineffective for 1) failing to move to strike a juror for cause; 2) failing to investigate the backgrounds of the jurors and inquire as to misstatements made by prospective jurors; 3) failing to move to conduct individualized questions regarding what prospective jurors may have already heard about the case and concerning any racial prejudice; and 4) failing to raise on appeal the voir dire process was deficient and inadequate.

1) During voir dire, juror Echevarria was questioned regarding her request to be excused. Doc. CR-451 at 117-118. This Court made note of Ms. Echevarria's situation. Id. at 118. This Court made further inquiry of Ms. Echevarria, during which time Ms. Echevarria made no further indication of her need to be excused. Id. at 213-218. During a discussion with counsel sidebar, this Court and counsel discussed dismissing jurors for cause. Id. at 225. This Court asked, "Ms.Echevarria?" to which Mr. Sartes stated, "Nothing wrong with her. She can stay here." Id. If counsel or this Court deemed that Mrs. Echevarria should have been excused for cause, she would have been dismissed for cause. As it stands, this court nor counsel discovered no specific reason or hardship that would warrant a dismissal for cause.

2) Moss fails to explain how the background of the jurors could have been investigated. His claim is not supported by any authority, nor is it facially sufficient to merit relief.

3) The issue of pretrial publicity was discussed in Ground Three above.

4) Appellate issues are addressed collectively below.

Ground five does not warrant relief.

19

Ground Six

Counsel failed to conduct pretrial investigation.

Moss alleges his counsel was ineffective because she failed to conduct a pretrial investigation and to present a defense at trial. Doc. CV-6 at 10B. Moss does not reveal what investigation should have been conducted by his counsel nor does he discuss any details about what he deems would have been revealed had an investigation been conducted. To establish ineffective assistance of counsel, a petitioner must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991). This claim is devoid of any factual support.

Ground six does not warrant relief.

Ground Seven

Counsel failed to effectively cross-examine the government's witnesses.

Moss claims his counsel was constitutionally ineffective for failing to effectively cross-examine government witnesses. Moss' complaints are largely refuted by the record. Counsel represented Moss' interests at trial and her trial strategy of attacking the government's case through the use of cross-examination was reasonable.

Courts give great deference to those choices made by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy. *Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir. 1995). Thus, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.

*Strickland*, 466 U.S. at 690; *see also Baxter v. Thomas*, 45 F.3d 1501, 1513 (11th Cir. 1995). Sound tactical decisions within the range of reasonable professional competence are not vulnerable to collateral attack. *See e.g., Weber v. Israel*, 730 F.2d 499, 508 (7th Cir. 1984) (choosing a defense is a matter of trial strategy); *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980). A tactical decision amounts to ineffective assistance of counsel "only if it was so patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983); *Strickland*, 466 U.S. at 690. Tactical decisions made by counsel do not render assistance ineffective merely because in retrospect it is apparent that counsel chose the wrong course. *Adams v. Balkcom*, 688 F.2d 734, 739 (11th Cir. 1982); *see also Alexander v. Dugger*, 841 F.2d 371, 375 (11th Cir. 1988). Thus, a court deciding an ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Strickland*, 466 U.S. at 690.

Under *Strickland*, Moss must establish that his counsel's alleged lapses affected the outcome of his trial. Moss does not even attempt to establish prejudice in his motion. Moss' counsel conducted numerous cross-examinations of the government's witnesses throughout the two-week trial. Without any specific instances as to which witnesses were not properly examined, the Court cannot address this claim. Further, Moss cites no case law in support of his contention. Consequently, this claim is meritless.

Ground seven does not warrant relief.

## Ground Eight

Counsel failed to object to the removal of Juror Amato after jury deliberations had begun.

As the Government pointed out, Moss did not raise this claim in his second amended motion to vacate.  However, in an abundance of caution, the Court will address the claim.

Moss contends that his counsel failed to object at trial to the removal of Juror Amato after jury deliberations had begun. On the morning of June 26, 2007, Juror Amato called and left a message on the courtroom deputy clerk's voice mail that he was sick and thought he had the flu and that he would not be in that day. Doc. CR-463 at 3-4. The courtroom deputy clerk returned the call to Mr. Amato and spoke with his wife who stated that they were trying to get him an appointment with the doctor. Id. at 4. The Court was concerned that Mr. Amato, should he appear and try to continue deliberating, would contaminate the remainder of the jury panel. Id. at 5. The Court told counsel that there were two alternates (jurors) and, if Mr. Amato was replaced, that the jury would be instructed to begin deliberating from "square one,"  and would need to reelect a foreperson and go back over their conversations. Id. at 6-7. The Court then advised counsel that they needed to make a decision regarding whether or not to wait for Mr. Amato to get better or to go forward and replace him. Id. at 7. The Court asked Ms. Rose, Moss' counsel, what the position of defendant Moss was concerning waiting or replacing Mr. Amato. Id. at 8. Ms. Rose stated that, "Mr. Moss said whatever the Court decides is fine with him." The Court later stated, "And you can tell Mr. Amato that he is discharged and excused as a juror. We [have] any problems with that?" This Court then asked each counsel in turn if there were any problems with that decision to which Ms. Rose stated on behalf of Moss, "No, Your Honor."

In the context of other juror removal cases, the Eleventh Circuit has written that "[w]e will reverse the district court only if we find that it discharged the juror 'without factual support, or for a legally irrelevant reason.'" *United States v. Register*, 182 F.3d 820, 839

22

(11th Cir.1999) (quoting *United States v. Smith*, 918 F.2d 1501, 1512 (11th Cir.1990)). The record in this case supports the fact that Juror Amato was removed after this Court reviewed the facts and discussed the facts with counsel for all parties. Moreover, the jury was properly instructed regarding its duties after his replacement.

Ground eight does not warrant relief.

## Ground Nine

Counsel was ineffective for failing to argue on appeal that the district court abused its discretion when it denied Moss's motion for a new trial based on newly discovered evidence.

Moss complains that his counsel was ineffective for not raising on appeal this Court's denial of his motion for a new trial based on newly discovered evidence. The standard for a new trial based on newly discovered evidence is a five-part test: (1) the evidence must be discovered following trial; (2) the movant must show due diligence to discover the evidence; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be of such a nature that a new trial would probably produce a different result. *United States v. Kersey*, 130 F.3d 1463, 1465 at fn. 2 (11th Cir. 1997). Great caution must be exercised by a district court when granting new trials based on newly discovered evidence. *United States v. Johnson*, 713  F.2d 654, 661 (11th Cir. 1983).

The issue Moss complains about was resolved by this Court on October 4, 2007. Doc. CR-364. In its Order denying the motion for new trial based on newly-discovered evidence, this Court adopted the government's response and incorporated it by reference into its Order. Id. Although this issue was not raised on direct appeal, Moss does not indicate why his counsel was ineffective for not doing so. More importantly, Moss does not

explain how he would have met the strenuous standard for review on appeal and thereby overcome the Court's ruling. Moss could not have prevailed on this issue on appeal given the record in this case and, therefore, appellate counsel did not raise it because it had no merit.

Ground nine does not warrant relief.

### Ground Ten

Counsel was ineffective for failing to move for a mistrial based on improperly admitted evidence.

Moss complains that his counsel did not move for a mistrial based on improperly admitted evidence during trial. The record refutes any such allegation. On June 19, 2007, prior to the testimony of the kidnap victim and her sister, a discussion was held at sidebar in which the attorney for co-defendant Cooper objected to the testimony that was about to be provided as being prejudicial to his client. Doc. CR-456 at 101-102. Moss's counsel echoed this objection. Id. at 102. The government then provided the Court with an explanation as to why the testimony was relevant and how it related to the conspiracy count in the indictment. Id. at 102-103. The Court subsequently overruled counsels' objections and permitted the testimony of the robbery and kidnaping. Id. at 104.

Counsel for Cooper then moved for a mistrial prior to the testimony of the kidnaping victim.  This Court deferred ruling on the motion until after the witness testified. Doc. CR-456 at 105. This Court asked Moss's counsel if she wished to join that motion for mistrial to which she replied, "Absolutely." Id. at 106. Counsel for Cooper again moved for mistrial prior to the testimony of the kidnaping victim's sister. Id. at 146. Moss's counsel again joined the motion for mistrial. Id. at 147. This Court subsequently denied all motions

for mistrial pertaining to these two witnesses. Id. at 158.

The record clearly shows that Moss's counsel moved for a mistrial on the evidence presented by the kidnap victim and her sister and this claim does not warrant relief.

Ground Eleven

Counsel was ineffective for failing to object to the instructions given to the jury.

Moss claims that his attorney failed to object to the jury instructions. This claim is unclear, if not incomprehensible, and is not supported by any factual or legal basis. Claims not fairly raised will not be entertained on collateral attack. *United States v. Jones*, 614 F.2d 80 (5th Cir. 1980); *Walker v. Dugger*, 860 F.2d 1010, 1011 (11th Cir. 1988) (claims raised only superficially). While a pro se litigant may be entitled to liberal construction of his arguments, issues mentioned only superficially will not be treated as properly raised. *Walker*, 860 F.2d at 1011. Likewise, vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991). The Court construes the claim as Moss's objecting to the manner in which the jury instructions were handled. The record reflects that on April 28, 2007, this Court issued an order that the government and all defendants were "directed" to confer on the jury instructions and to file up to three types of proposed instructions, those being instructions agreed to by all parties, those proposed by the government to which the defendants objected, and those proposed by the defendants to which the government objected. Doc. CR-132. The jury instructions were discussed at the jury charge conference, as is the standard practice in this district. Doc. CR-458 at 71-73; 76- 79. During the charge conference, counsel for co-defendant Cooper told this Court that all three attorneys had

25

gone through the jury instructions over the lunch break. Id. at 77. This Court then asked if the instructions were acceptable to which all attorneys said that they were. Id. at 77-78.

Moss fails to show that any of the jury instructions were improper. Otherwise, he has failed to show any deficient performance by his counsel in addressing the jury instructions and also failed to identify how he suffered any prejudice from the perceived deficient performance by counsel.

Ground eleven does not warrant relief.

### Ground Twelve

Counsel was ineffective for failing to object to the guidelines application.

Moss contends that his counsel was ineffective for failing to challenge the amount of drugs attributable to him and that he should not have received a two-level enhancement for possessing a firearm.

Although this Court should construe Moss's pro se motion more liberally than a pleading filed by an attorney, *Fernandez v. United States*, 941 F.2d 1488, 1491 (11th Cir.1991), this principle cannot excuse Moss's failure to explain why he is entitled to any relief for failure to previously raise these issues.

Nevertheless, Moss's claim fails because the evidence at trial included testimony that Terry Eady was cooking approximately a quarter kilogram of cocaine into crack cocaine every week, which in turn was being sold by Moss and others. Doc. CR-457 at 57. So, while the jury found Moss' offense involved 50 grams or more of cocaine base as to Count One of the Indictment, and 5 grams or more of cocaine base as to Count Nine of the Indictment, Doc. CR-279, the testimony of Eady clearly supported the guideline level of 38 assigned to the offense.

In addition, Moss was found guilty of conspiracy to unlawfully use and carry firearms during and in relation to a drug trafficking offense. Doc. CR-279. U.S.S.G. § 2D1.1(b)(1) provides for a two level increase in the offense level if a dangerous weapon was possessed. There were firearms present during the drug transactions that took place at the residence. PSR ¶ 44. Also, two co-defendants testified at trial that Moss carried a firearm. Id.

Consequently, Moss's allegations are broad and conclusory allegations and are not sufficient to establish ineffective performance and/or resulting prejudice. Claims not fairly raised will not be entertained on collateral attack. *United States v. Jones*, 614 F.2d 80 (5th Cir. 1980); *Walker v. Dugger*, 860 F.2d 1010, 1011 (11th Cir. 1988) (claims raised only superficially). While a pro se litigant may be entitled to liberal construction of his arguments, issues mentioned only superficially will not be treated as properly raised. *Walker,* 860 F.2d at 1011. Likewise, vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991).

Moss has failed to show any deficient performance by his counsel and failed to identify how he suffered any prejudice from the alleged deficient representation that meets the *Strickland* standard and his claims are meritless.

Ground twelve does not warrant relief.

Ground Thirteen

Counsel was ineffective for failing to move for a mistrial based on the government's failure to disclose a report of interview of Jarvis McCants.

Moss alleges his counsel was ineffective because she failed to move for a mistrial

based on the government not providing a report of interview for Jarvis McCants. Doc. CV-6 at 10F. Moss does not reveal what interview was not disclosed, nor does he discuss any details about what would have been revealed had the interview been disclosed and to what extent he was prejudiced by the interview not being disclosed. To establish ineffective assistance of counsel, a petitioner must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger,* 941 F.2d 1551, 1559 (11th Cir. 1991). This claim is devoid of any factual support.

Ground thirteen does not warrant relief.

Ground Fourteen

Counsel was ineffective for failing to move for a new trial based on the government's presentation of false testimony during trial.

Moss alleges his counsel was ineffective because she failed to move for a new trial based on the government's submission of alleged false testimony during trial. Doc. CV-6 at 10F-G. Once again, however, Moss does not reveal what testimony he claims was "false" during the trial, nor does he discuss any details or to what extent he was prejudiced by the so-called "false" testimony. To establish ineffective assistance of counsel, a petitioner must provide factual support for his contentions regarding counsel's performance. *Smith v. White,* 815 F.2d 1401, 1406-07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991). This claim is devoid of any factual support.

Ground fourteen does not warrant relief.

GROUND FIFTEEN

Counsel was ineffective for failing to allow Moss to testify.

Moss claims his trial lawyer was ineffective because she did not allow him to testify during trial. Doc. CV-6 at 10G. Moss's allegations that his attorney refused to permit him to testify requires straightforward application of the *Strickland* test. The right to testify cannot be waived by defense counsel. *United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992) (en banc). Because defense counsel primarily is responsible for advising the defendant of his right to testify, the appropriate vehicle for a claim that counsel violated the defendant's right to testify is a claim of ineffective assistance of counsel. Id.

Such claims, however, must still meet the two pronged analysis of *Strickland*. *Nichols v. Butler*, 953 F.2d 1550, 1553-54 (11th Cir. 1992); *Teague*, 953 F.2d at 1535. "It is true that a defendant's testimony 'in his own trial is unique and inherently significant.' But this presumption, standing on its own, is not enough to show prejudice under Strickland." *See Rodriguez v. United States*, 286 F.3d 972, 985 (7th Cir. 2002) (quoting *Nichols*, 953 F.2d at 1553). The defendant must show both that his counsel performed deficiently by infringing on his fundamental right to testify and that, had he testified, the result of his trial would have been different. *Rodriguez*, 286 F.3d at 985; *see also United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001) (applying *Strickland* test and concluding that attorney's advice to defendant not to testify was not unreasonable and that, even if defendant had testified, the proceedings would not have been affected); *Teague*, 953 F.2d at 1535 (holding that, because defendant had failed to show that his will was "overborne" by defense counsel, court had no need to determine whether defendant was prejudiced).

A district court faced with conflicting uncorroborated allegations of a section 2255 petitioner and uncorroborated allegations of the petitioner's former trial counsel concerning counsel's advice regarding the right to testify may not simply deny the petition based on a "per se credit counsel in case of conflict rule" without making credibility findings. *See Gallego v. United States*, 174 F. 3d 1196, 1199 (11th Cir. 1999); *but cf. Chang v. United States,* 250 F.3d 79, 84 (2nd Cir. 2001) (expressing disagreement with *Gallego* while, at the same time, holding that district court had not "summarily" dismissed petition and that dismissal of petition without a hearing based on trial counsel's affidavit was not abuse of discretion when petitioner's claims were "generic," counsel's affidavit was detailed, and district judge had presided over the trial). This court's credibility findings may take into account internal inconsistencies in the petitioner's allegations, conflicts between the petitioner's allegations and the existing record, and the Court's knowledge of the prior proceedings. *Id., see also Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2002).

Moss's claim is insufficient to merit any consideration by this court because it is facially insufficient to meet either the performance or the prejudice prongs of *Strickland*. As to performance, Moss asserts that counsel did not allow him to testify at trial. Doc. CV-1 at 10G.

While the current record does not contain any specific statement from Moss's counsel concerning what advice she gave Moss as to testifying during trial, in his motion, Moss admits counsel advised him of his right to testify and discussed with him the disadvantages of testifying. Id. Moss claims that counsel advised, "I don't think that's a good idea [for you to testify] because the prosecutor will tear you apart on the stand;" and

"we don't have time to prep you for your testimony." Even if Moss's counsel had made these statements, it doesn't change the fact that he, not his counsel, ultimately made the decision not to testify.

This Court need not reach the question of whether Moss's counsel performed deficiently, however, because Moss has not shown he was prejudiced. *See Strickland*, 466 U.S. at 697. Moss claims counsel should have allowed him to testify so the Judge and the jury could have fairly weighed his credibility against the credibility of the "government witnesses [who] were lying on him." Doc. CV-1 at 10G. Moss, however, fails to state what the witnesses were lying about and how his testimony would have affected the outcome of the trial. Moss has not alleged that had he testified, the outcome of the trial would have different.

Ground fifteen does not warrant relief.

Appellate Issues

Throughout Moss's 2255 motion, he makes claims that counsel was ineffective for not arguing certain issues on appeal, namely grounds four, five, nine, ten, eleven, and fourteen.

Like the standard for trial counsel in *Strickland*, appellate counsel too are entitled to a wide latitude when a reviewing court examines their professional behavior. It is proper for appellate counsel to make tactical decisions on selecting issues, including the tactical decision not to dilute strong arguments with weak ones. *Jones v. Banner*, 463 U.S. 745, 751 (1983); *Hendricks v. Calderon*, 70 F.3d 1032, 1042 (9th Cir. 1995). It is proper that appellate counsel impose her professional judgment in crafting the appeal.

Moss merely lists issues which he now believes should have been raised in his

31

appeal. He does not explain where or how the issues relate to the case. They contain very limited citations to the record and no citations to any legal authority. It is impossible from the quantity of information set forth in his petition to analyze those issues in any meaningful way. Those challenges, therefore, must fail because they lack particularity, there has been no showing that it was error for counsel to not raise them, and there has been no showing whatsoever that they would have any chance of success on appeal. A review of the appeal filed by counsel for Moss shows a thoughtful and rigorous selection of issues. After the Eleventh Circuit affirmed the conviction and sentence, counsel petitioned the U.S. Supreme Court for a Writ of Certiorari.

Moss is not entitled to relief on any of his appellate claims.

**Accordingly, the Court orders**:

1. That Moss's 28 U.S.C. § 2255 motion to vacate (Doc. CV-6; CR-596) is denied.

2. That Moss's second amended motion to vacate (Doc. CV-21; Doc. CR-602) is denied as moot.

3. That Moss's motion to apply the Fair Sentencing Act of 2010 to his 28 U.S.C. § 2255 motion to vacate (Doc. CV-24) is denied.

The Clerk is directed to enter judgment against Moss and to close this case.

**CERTIFICATE OF APPEALABILITY AND**

**LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant

32

has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2).

To make such a showing, Defendant "must demonstrate that reasonable jurists would find

the district court's assessment of the constitutional claims debatable or wrong," *Tennard*

*v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)),

or that the issues presented were 'adequate to deserve encouragement to proceed further.

*Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S.

880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these

circumstances.

Leave to proceed in forma pauperis is denied.  Moss must pay the full $455.00 filing

fee without installments unless the United States Court of Appeals for the Eleventh Circuit

allows Moss to proceed in forma pauperis.

ORDERED at Tampa, Florida, on October 15, 2010.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

A U S A :
Matthew   H.
Perry
Jermaine Lenard Moss